# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 8059 | DATE | 10/11/2002 |
| CASE TITLE | Esperanza Cisneros v. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, this Court GRANTS the City of Chicago's motion for summary judgment [30-1]. The City's motions to strike portions of Cisneros's and Sharon Dancy's affidavits [36-1][36-2] are DENIED as moot. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | OCT 1 4 2002 | |
| | Notices mailed by judge's staff. | | date docketed | 38 |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | AMC | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| ESPERANZA CISNEROS, | ) |
| | ) No. 00 C 8059 |
| Plaintiff, | ) |
| | ) HONORABLE DAVID H. COAR |
| v. | ) |
| | ) |
| CITY OF CHICAGO | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Esperanza R. Cisneros ("Cisneros") brings a discrimination and retaliation action pursuant to the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*. Cisneros alleges that her employer, the City of Chicago's Department of Aviation (the "City"), discriminated against her on the basis of age when, after she asked to work overtime hours and overtime hours were available, the overtime was given to younger co-workers with less seniority. Cisneros further alleges that the City retaliated against her by denying her overtime from the date she filed the EEOC charge on August 8, 2000 through February 9, 2001. Before this Court is the defendant City's motions to strike portions of Cisneros's and Sharon Dancy's affidavits, and for summary judgment on remaining counts I and II of the Amended Complaint.[1] For the reasons stated below, this Court GRANTS the City's motion for summary judgment in its entirety, and DENIES as moot the City's motions to strike portions of the affidavits.

### I. Summary Judgment Standard

---

[1] On November 20, 2001, this Court dismissed Count III of Cisneros's Amended Complaint.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Michael v. St. Joseph County, et. al., 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). A scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing

evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

## II. Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. Cisneros, a 58-year old female, is and has been employed by the City of Chicago Department of Aviation since July 16, 1989. Cisneros was 46-years old when she began working for the City, and she was hired as a security officer. Her duties included checking individuals' identification cards and vehicles before those individuals were provided access to the airfield at Chicago O'Hare airport (the "airport"). Cisneros's duties essentially have remained the same during her tenure at the Department of Aviation, although her title has changed to that of aviation special police officer ("officer"). Cisneros has worked the second watch--5:30 a.m. to 2:00 p.m.--since she began working for the City. There are approximately 50 officers who worked the second watch with Cisneros. Cisneros believes that there are only three officers on her watch that are older than her. Cisneros is ranked ninth in seniority on the second watch. During the relevant time period, February 1, 2000 to July 31, 2001, Cisneros had more seniority than Officers Jasna Bulatovic, Patricia Haddon, and Dirar Jaber.

The award of overtime hours for the City's Department of Aviation is governed by the Collective Bargaining Agreement (the "CBA") between the City and the Public Safety Employees

Union. The relevant portion of the CBA provides that:

> (a) A reasonable amount of overtime and/or premium time shall be a condition of continued employment. Overtime and/or premium time referred in this Agreement, shall be offered first to the employee doing the job. Thereafter, overtime and/or premium time at the location shall be offered by seniority in the employee[']s job classification, provided the most senior employee has the then present ability to perform the job to the Employer's satisfaction without further training . . . .
> (b) Those employees in any classification who have been given the option to work the overtime and/or premium time, whether the option was accepted or rejected, will not be afforded the option to work subsequent overtime and/or premium time until all employees in the classification have been afforded the opportunity.

While there are substantial opportunities for overtime work, working overtime during the time period at issue (2000-2001) was voluntary.

Sgt. Christopher DiSandro ("DiSandro") is the administrative sergeant in the second watch. He assigns second watch officers overtime hours based on the officers' completion of the "Officer's Request to Work Overtime (6th Day Only) Form" (the "Form"). In completing the form, an officer alerts her command sergeant that she is available to work on her 6th day, which would be the officer's first off day of the week. DiSandro collects these forms from officers who seek to work overtime in the months before the overtime is sought. DiSandro determines, by seniority, who gets any available overtime that exists the month before the schedule is completed.[2] He then notifies officers of approved overtime days. An officer, like Cisneros, can list multiple days that she is available to work on her 6th day on any given month, but she is not guaranteed overtime hours on her 6th day. Depending on the available overtime for the next month, officers submitting multiple dates usually would get at least one day approved. On the dates that the 6th

---

[2] Cisneros disputes that DiSandro assigns overtime by seniority because, according to her personal calendar for June 2001, DiSandro gave more 6th day overtime to Officer Weidel, who had less seniority than Cisneros.

day request was not approved, the officer would advise DiSandro whether she or he would be available for work if the need should arise.

Lt. Louis Mills ("Mills") is the shift supervisor for the third watch. He assigns second watch officers to work overtime on the third watch in the event a third watch officer is unable to work his or her shift. If an employee scheduled to work the third watch calls in sick, Mills or another lieutenant on duty is responsible for finding a replacement. Mills will first ask the officer on the second watch (who is working the same post that will be vacant during the third watch) if she or he is available to work overtime.[3] If that officer is not available, the option to work overtime on the third watch will be extended to everyone on the second watch based on seniority. If more than one officer seeks the overtime, seniority will be used. If an officer with more seniority already had been afforded the opportunity to work overtime, that officer is ineligible for the overtime.[4]

On August 8, 2000, Cisneros filed a charge of discrimination against the City with the EEOC on the basis of age, religion, and national origin.[5] In the EEOC charge, Cisneros claims that

---

[3] Cisneros disputes that Mills followed this procedure all of the time. She testified that, on more than one occasion, Mills did not ask her to work overtime when the person on the third watch who had the same post as Cisneros called in sick. Further, she and Officer Dancy testify that the seniority clause in the CBA was ignored "on more than five occasions" to benefit Jaber and Bulatovic.

[4] Cisneros identifies another procedure used to distribute overtime among the officers at O'Hare. When overtime was available, an announcement was made over the Department of Aviation's radio frequency. If officers were interested in working overtime, they would call back and state their interest. However, this was not an additional procedure used; rather this was the process Mills employed when he extended an offer to everybody to work overtime.

[5] Before Cisneros went to the EEOC, Dancy observed her crying in the women's bathroom "on almost a daily basis" because she was not being offered overtime after she had requested it.

the denial of overtime began in January 2000. The EEOC issued a Right to Sue letter to Cisneros on September 26, 2000. Cisneros was denied overtime hours that were available on February 1 and 17, 2000, May 2, 9, 17, and 18, 2000, July 5, 6, 9, 12, 17, 19, 20, 25, 2000. Cisneros was denied further overtime on August 19, 2000, February 8, 2001, and April 11, 2001, which she alleges was in retaliation to her August 8, 2000 EEOC charge.[6] These overtime hours were given to three other officers--Officers Haddon, Jaber, and Bulatovic--all of whom were under the age of 40.

Cisneros's time sheet reflects that she often worked overtime hours on the days directly before or after the dates she was denied overtime. The following table indicates the dates that Cisneros was denied overtime and the dates that she worked overtime:

| Dates that Cisneros was denied overtime | Surrounding dates with worked overtime |
| --- | --- |
| February 1, 2000 | January 27, 28, 29, 2000 |
| May 2, 2000 | April 28, 30, 2000 |
| May 9, 2000 | May 5, 8, 2000 |
| May 18, 2000 | May 19, 2000 |
| July 5, 2000 | June 29, 30, and July 4, 2000 |
| July 9, 12, 17, 19, 2000 | |
| July 25, 2000 | July 24, 28, 2000 |

---

[6] Cisneros also alleges that she and Dancy observed that Cisneros received more "bad assignments" than other officers after she filed her EEOC charge, including posts at which the work was more difficult when the weather was extreme.

August 19, 2000[7]

February 8, 2001                                February 9, 12, 2001

April 11, 2001                                  April 13, 2001

The City maintains that these denials of overtime were done according to the department policy and the CBA. Cisneros disputes that fact and contends that there were deviations from the policies, see supra notes 2 and 3. She also states that on July 6, 2000, Mills informed her that she could work overtime, but she was later told by desk officer Figueroa that Mills did not need her to work overtime; Cisneros found out the following day that Officers Jaber and Bulatovic, along with several others from their shift with less seniority than Cisneros, worked the overtime.

A comparison of time sheets belonging to Cisneros, Bulatovic, and Haddon--all of whom worked the second watch at O'Hare in 2000--shows that Cisneros worked 89 days of overtime, Bulatovic worked 64 days of overtime, and Haddon worked 56 days of overtime. A 2001 Department of Aviation audit, which indicated each officer's base pay and overtime pay for the year 2001, revealed that Cisneros received the third highest overtime hours of all officers on the second watch, even though she is ninth in seniority on that watch. The 2001 audit report also indicates that Cisneros's 2001 base salary was $43,728.00 and her overtime pay was an additional $22,588.81 (not including the compensatory time she received for the overtime hours.) As for Officer Jaber, the City contends that, while he was employed with the Department of Aviation in 2000, he did not work at the O'Hare airport until May 1, 2001. Cisneros disputes this fact based

---

[7] Cisneros's time sheet reflects that August 19, 2000 was her "7th day off." Only in extreme circumstances are officers allowed to work overtime on their 7th day off.

on her notes, which indicate that Jaber worked with her in 2000. The 2001 audit report reveals that Jaber received $5,882.46 more overtime pay than Cisneros in 2001.

### III. Discussion

*A. Motions to Strike*

As a preliminary matter, this Court addresses the City's motions to strike portions of Cisneros's affidavit and portions of Dancy's affidavit. The City moves to strike portions of Cisneros's affidavit that are vague and ambiguous, immaterial, unsupported, lack foundation, contain hearsay, conflict with her deposition testimony, or are otherwise inadmissible. Cisneros's affidavit mostly rehashes the allegations in her complaint. This Court will disregard statements that are immaterial but it declines to strike portions of her affidavit. The following portions of Cisneros's affidavit, however, should be stricken: 1) In paragraph 3, the phrase, "who were under forty," is inconsistent with her prior testimony; 2) Paragraph 11, in which Cisneros states the City has ignored the seniority clause in the CBA to the benefit of Jaber and Bulatovic, is conclusory and lacks evidentiary support; and 3) Paragraph 14, in which Cisneros states she received "more bad assignments" after she filed her EEOC claim than other officers, is conclusory and lacks evidentiary support.

Similarly, many portions of Dancy's affidavit are immaterial, unsupported, lack foundation, contain hearsay, or are otherwise inadmissable. Some examples are: 1) Paragraph 4, in which Dancy asserts that Jaber would be offered to work overtime when overtime was available almost every time Dancy was working, is hearsay and lacks evidentiary support; 2) Paragraph 5, in which Dancy asserts that, over the past three years, Cisneros rarely was offered overtime after she called in and was interested in working is hearsay, lacks personal knowledge and evidentiary support; 3) Paragraph 7, in which Dancy states the City has ignored the seniority clause in the CBA to the

-8-

benefit of Jaber and Bulatovic, is conclusory and lacks evidentiary support; 4) In paragraph 9, the phrase that states the reason Cisneros was crying in the bathroom--"because she was not being offered overtime after she had requested it and Officers Jaber and Bulatovic received it"-- is conclusory and hearsay; 5) Paragraph 11, in which Dancy asserts that Cisneros's overtime hours declined after she filed her EEOC claim, is conclusory and lacks evidentiary support; and 6) Paragraph 12, in which Dancy states that Cisneros received "more bad assignments" than other officers after filing her EEOC claim, is conclusory and lacks evidentiary support. This Court declines to strike these portions of Cisneros's and Dancy's affidavits only because even when this Court considers these allegations, Cisneros cannot survive summary judgment. The City's motions to strike portions of the affidavits are therefore denied as moot.

*B. Motion for Summary Judgment*

Cisneros's action consists of an age discrimination claim and a retaliation claim. In Count I, Cisneros alleges that the Department of Aviation consistently distributed overtime hours in a discriminatory fashion by denying her requests for overtime and giving those hours to coworkers younger than 40 years old. In Count II, Cisneros alleges that the Department of Aviation retaliated against her for filing an EEOC charge on August 8, 2000 by continuing to deny her requests for overtime up to and including February 9, 2001. The City argues that its motion for summary judgment should be granted in its favor on both counts. This Court addresses each count in turn.

1. Count I - Age Discrimination Claim

Cisneros, who is a 58-year old female, claims that the Department of Aviation discriminated against her on the basis of her age when, she requested to work overtime hours, overtime hours were available, and those hours were given to her coworkers under the age of 40 instead of her. Cisneros, having no direct evidence to support these assertions, must proceed on

Count I under the burden-shifting method articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973). See Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 875 (7th Cir. 2002) (stating that the McDonnell Douglas framework applies to both Title VII and ADEA claims). Under this burden-shifting approach, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 505 (1993); Franzoni v. Hartmarx Corp., 300 F.3d 767, 771 (7th Cir. 2002); Hall v. Bodine Elec. Co., 276 F.3d 345, (7th Cir. 2002). To establish a *prima facie* case of age discrimination, an employee must show that: (1) she was over forty years of age; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. Franzoni, 300 F.3d at 771-72; Krchnavy, 294 F.3d at 875. Once the plaintiff establishes a *prima facie* case, a legal, rebuttable presumption of discrimination arises, and a burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Franzoni, 300 F.3d at 772; Nawrot, 2002 WL 27528, at *7. If the employer satisfies that burden, the presumption of discrimination extinguishes, and the burden shifts back to the plaintiff to persuade the trier of fact either directly that a discriminatory reason more likely motivated the action or indirectly that the employer's articulated reason for the employment action is unworthy of credence and is but a mere pretext for intentional discrimination. Id.

At all times, the ultimate burden of persuasion remains with the plaintiff. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-56 (1981). In the third stage, the plaintiff's burden under the McDonnell Douglas framework merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination or retaliation. Id. at 253. At this point, the McDonnell Douglas framework no longer is relevant; the third step simply returns the plaintiff

-10-

to her original position, that of proving intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); see also Hicks, 509 U.S. at 510 (stating that the McDonnell Douglas burden-shifting framework "simply drops out of the picture").

The City concedes for the purposes of this motion that Cisneros meets the first two requirements for establishing a *prima facie* case. It argues, however, that Cisneros fails to meet the last two requirements because she has not suffered an adverse employment action and she cannot show that substantially younger employees were treated more favorably. This Court agrees.

To establish a *prima facie* case for both age discrimination and retaliation, Cisneros must have suffered an adverse employment action. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision constituting a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see also Traylor v. Brown, 295 F.3d 783, 788 (summarizing the "adverse employment action" requirement). While an adverse employment action is defined quite broadly, not everything that makes an employee unhappy suffices. See Traylor, 295 F.3d at 788; Hilt-Dyson v. City of Chicago, 282 F.3d 456, 466 (7th Cir. 2002); Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Rather, Cisneros must show that "material harm has resulted from . . . the challenged actions." Traylor, 795 F.3d at 788 citing Haugerud v. Amery Sch. Dist., 259 F.3d 678, 692 (7th Cir. 2001).

Ordinarily, denial of overtime has a tangible economic effect, and would constitute an adverse action, see Moore v. Henderson, 174 F. Supp. 2d 767, 776 (N.D. Ill. 2001). Here, however, Cisneros has received a substantial amount of overtime. Indeed, in 2001, she received the third highest overtime hours of all officers on the second watch, even though she is ninth in seniority on that watch, and her overtime pay was an additional $22,588.81 for that year. In 2000,

-11-

Cisneros worked 89 days of overtime, while Bulatovic and Haddon (two officers whom she identifies as being younger than her and receiving overtime hours that she was denied) worked 64 and 56 days of overtime, respectively. Cisneros admits that she gets more overtime than other officers on her watch. Thus, Cisneros's alleged adverse employment action is not a general denial of overtime; instead, she essentially is complaining about not receiving overtime every time she requested it. Cisneros, however, is not entitled to work overtime every time she requests it, and neither is any other employee regardless of his or her age.[8] Cisneros was clearly unhappy with being denied overtime sometimes, but she was not terminated, demoted, or disciplined. Further, her pay was not diminished, as she received more overtime pay than most of her coworkers, and her job responsibilities were not materially diminished. In sum, the City's failure to award Cisneros overtime on those dates that she has identified may have distressed her, but it did not cause her material harm that would constitute an adverse employment action under the ADEA.

Cisneros also fails to meet the fourth requirement for establishing a *prima facie* case of age discrimination that similarly situated younger employees were treated more favorably. While Cisneros claims that younger officers, such as Haddon, Bulatovic, and Jaber, were offered more overtime, the fact that she received more overtime than all of them in 2000, and more overtime than Haddon and Bulatovic in 2001 belies her claim. As for Jaber in 2001, while he received $5,882.46 more overtime pay than Cisneros, the City argues persuasively that he was not similarly

---

[8] The City distributes overtime according to procedures set forth in the CBA, which are based on seniority. The CBA, procedures, however, also provide that those employees in any classification who have been given the option to work overtime will not be afforded the option to work overtime again until all employees in the classification have been afforded the opportunity. Even if the City misapplied the stated policy on some occasions, that fact fails to establish that the misapplication was on account of age or retaliation where, as here, Cisneros received substantial overtime before and after filing a charge with the EEOC.

situated to her because he worked as an officer at O'Hare for only part of 2001, and thus not all of his overtime came from the same airport. Thus, Cisneros fails to show that substantially younger similarly situated employees were treated more favorably.

Even if Cisneros established a *prima facie* case of age discrimination, the City articulated a legitimate, non-discriminatory reason for denying her overtime on the dates that Cisneros has identified. Namely, the City states that Cisneros was denied overtime because, pursuant to the CBA procedures regarding distribution of overtime, Cisneros already had worked overtime the days directly before or after the dates in question. Because Cisneros worked a substantial amount of overtime compared to other officers on her watch, it is not surprising that the City would offer overtime to other officers before her. Once the City articulated its non-discriminatory reason for denying her overtime, the burden shifts to Cisneros to persuade the Court either directly that a discriminatory reason more likely motivated the action or indirectly that the employer's articulated reason for the employment action is unworthy of credence and is but a mere pretext for intentional discrimination, see Franzoni, 300 F.3d at 772. When deciding a grant of summary judgment, however, the only question before the court is whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies. Guerrero v. Ashcroft, 253 F.3d 309, 313 (7th Cir. 2001); see also Bell v. E.P.A., 232 F.3d 546, 550 (7th Cir. 2000) ("If the only reason an employer offers for [taking adverse action against] an employee is a lie, the inference that the real reason was a forbidden one . . . may reasonably be drawn. This is the common sense behind McDonnell Douglas.") (citations omitted). Thus, it is up to Cisneros not only to cast doubt on the veracity of the City's reasons, but also to prove that the real reason was discrimination.

Cisneros argues that the City's reason is a pretext for discrimination because she and Officer Dancy observed "on more than five occasions" that the CBA procedures were ignored to benefit Jaber and Bulatovic, and because Lt. Mills cannot recall calling Cisneros over the public address system to work overtime while he does recall calling Jaber. Cisneros, however, offers no evidence to support her assertions. For example, despite her "note-taking," she does not provide the specific dates which the CBA procedures were allegedly ignored, nor does she even explain exactly how the other officers were "benefitted." In fact, at her deposition, Cisneros admitted that she was unaware that the CBA agreement provided that once overtime was offered to an employee, it could not be offered to the same employee until the opportunity to work overtime was afforded to others. If she were unaware of this procedure, her belief that the policies were being ignored was unfounded. Further, the fact that Lt. Mills remembers calling Jaber over the radio and not Cisneros hardly establishes pretext. Even if this Court were to assume that Lt. Mills *never* offered Cisneros overtime over the radio, it was only one way in which overtime was awarded; because Cisneros received a substantial amount of overtime, her not receiving overtime through this method does not demonstrate that the City's reason is a mere pretext for discrimination.

In short, Cisneros falls substantially short of meeting her burden as she has presented no evidence from which it can be inferred that the City's stated reasons for denying her overtime was a pretext for discrimination. Because Cisneros does not establish a *prima facie* case of age discrimination, and because even if she did, she cannot demonstrate the City's legitimate, non-discriminatory reason was a pretext, this Court GRANTS the City's motion for summary judgment as to Count I, the discrimination claim.

2. Count II - Retaliation Claim

Cisneros's second claim is that the City retaliated against her for her EEOC activity in violation of Title VII. As with her discrimination claim, Cisneros does not have direct evidence and therefore proceeds under the McDonnell Douglas framework applicable to retaliation claims.

In order to prevail on a claim of retaliation, a plaintiff must first demonstrate a *prima facie* case by showing that: (1) she engaged in statutorily engaged expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. Miller v. Am. Fam. Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000). Cisneros cannot establish a *prima facie* case for retaliation. She alleges that she was denied overtime in retaliation of filing an EEOC charge.[9] For the reasons discussed above, however, those denials do not constitute an adverse employment action. Even if they did, Cisneros has failed to show that the individuals responsible for making those decisions knew about Cisneros's EEOC filing,[10] thus she fails to show a causal link between her filing and the denials of overtime. Cisneros also argues that she received more bad assignments than other officers after she filed her discrimination charge. Yet, short of her and Dancy's conclusory, self-serving statements, Cisneros offers no evidence to substantiate this claim, see Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001) (holding that self-serving statement unsupported by the record are insufficient to defeat summary judgment). Cisneros fails to identify the individual who allegedly gave her these bad

---

[9] Cisneros also argues that Jaber's accrual of more overtime pay than her constitutes retaliation against her. The adverse action against Cisneros, however, would not be Jaber's pay, but the City's action of denying her overtime.

[10] In fact, the record shows that two of the individuals responsible for distributing overtime--Lt. Mills and Sgt. DiSandro--did not know about Cisneros's EEOC charge. Their denials of overtime could not constitute retaliation. Johnson v. Nordstrom, Inc., 260 F.3d 727, 735 (7th Cir. 2001).

-15-

assignments nor does she allege that the individual knew she had filed her charge when he or she gave her the assignments. Cisneros also fails to identify when she received these assignments, and she therefore cannot prove that there is a causal connection between these allegedly bad assignments and the filing of her EEOC charge. For these reasons, this Court GRANTS the City's motion for summary judgment on Cisneros's retaliation claim.

## IV. Conclusion

For the foregoing reasons, the City's motion for summary judgment is GRANTED in its entirety; the City's motions to strike portions of Cisneros's and Dancy's affidavits are DENIED as moot.

Enter:

_____

David H. Coar

**United States District Judge**

Dated: October 11, 2002